UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LINDA M. CETERA,<br><br>           Plaintiff,<br>   v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>           Defendant. | Case No.: C-09-00734 PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket Nos. 22, 29) |

Plaintiff Linda M. Cetera ("Cetera") filed this action on February 18, 2009, appealing the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying her disability insurance benefits.[1] Cetera moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. Cetera did not file any reply to the Commissioner's cross-motion. The matter thereafter was submitted without oral argument, pursuant to Civ. L.R. 7-1(b). Having reviewed the papers and considered the arguments of counsel, Cetera's motion for summary judgment is DENIED and the Commissioner's cross-

---

[1] The challenged decision was rendered by Administrative Law Judge Brenton L. Rogozen ("the ALJ") on February 27, 2008. The ALJ's decision became final on December 22, 2008, when the Appeals Council of the Social Security Administration denied Cetera's request for administrative review of the decision.

ORDER, *page 1*

motion for summary judgment is GRANTED.

## I. BACKGROUND

The following facts are taken from the February 27, 2008 decision by the ALJ and the accompanying administrative record ("AR"). At the time of the hearing, Cetera was fifty-three years old.[2] She had a high school education and completed one year of college.[3] Her past work experience included five years conducting intake interviews for a school district and two years as a concierge in the hotel industry.[4] In December 2002, Cetera had a nervous breakdown that caused her employment at the hotel to end.[5] In 2004, Cetera sought permanent employment with another hotel, a catering company and an Internet company.[6] In each of those instances, however, she was employed for less than 90 days because she was unable to "focus and was slow to catch on."[7] Cetera described experiencing frequent panic attacks and anxiety.[8] In August 2007, Cetera was employed for less than a week with the San Jose Unified School District.[9] Her duties included speaking with parents and their children to determine placement options for prospective students.[10] One day, Cetera left work early because she was not feeling well.[11] She rushed to the emergency room and was diagnosed with an anxiety disorder.[12] The next day, Cetera was informed that her employment had been temporary and that she was no

---

[2] *See* AR at 43.

[3] *See id.* at 43-44.

[4] *See id.*

[5] *See id.* at 45.

[6] *See id.*

[7] *See id.*

[8] *See id.* at 51.

[9] *See id.*

[10] *See id.* at 52.

[11] *See* AR at 53.

[12] *See id.*

longer needed.[13]

Cetera alleges that she became disabled on August 11, 2003 as a result of depression and exhaustion.

On October 5, 2005, Cetera applied for disability insurance benefits.[14] The application was initially denied on December 23, 2005.[15] On October 20, 2006, her application was denied upon reconsideration.[16] The ALJ held an administrative hearing on February 5, 2008 in San Jose, California.[17] Cetera, who was represented by an attorney testified at the hearing.[18] A vocational expert, Thomas Linvill, also testified at the hearing.[19]

The ALJ found that Cetera was not disabled within the meaning of the Social Security Act. The ALJ evaluated Cetera's condition pursuant to the sequential process required by 20 CFR §§ 404-1520(a) and 416.920(a). At step one, the ALJ concluded that Cetera had not engaged in substantial gainful activity since August 11, 2003, the alleged onset date. At step two, the ALJ found that Cetera's borderline intellectual functioning, depressive disorder (not otherwise specified, in partial remission), generalized anxiety disorder (in partial remission), and a personality disorder (not otherwise specified, with histrionic and passive-aggressive features) constituted a severe combination of impairments under 20 CFR § 404.1520(c). The ALJ further found that Cetera suffered a marked impairment of her short-term auditory memory. At step three, the ALJ concluded that Cetera did not have an impairment or combination of impairments that met or medically equaled one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[13] *See id.* at 53-54.

[14] *See* Decision at 16.

[15] *See id.*

[16] *See id.*

[17] *See id.*

[18] *See id.*

[19] *See* AR at 24.

1  In determining Cetera's residual functional capacity, the ALJ found that while she was moderately restricted in her ability to understand, remember, and carry out complex or detailed tasks, she was not significantly limited in her ability to understand, remember and carry out the simple and repetitive 1-2 step tasks characteristic of unskilled work.

At step four, the ALJ found that Cetera could not return to her past work.  At step five, the ALJ found that Cetera's residual functional capacity enabled her to perform other work that exists in significant numbers in the national economy.

Based on those determinations, the ALJ concluded that Cetera was not disabled as defined by the Social Security Act at any time through the date of his decision.

## II.  LEGAL STANDARD

### A.   Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision denying Plaintiff benefits.  The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[20]  In this context, the term "substantial evidence means "more than a mere scintilla but less than a preponderance-it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."[21]  When determining whether substantial evidence exists to support the ALJ's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.[22]  Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[23]

### B.   Standard for Determining Disability

A person is "disabled" for purposes of receiving disability insurance benefits if he or she

---

[20] *See Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[21] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[22] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989).

[23] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

is unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months.[24]

Disability claims are evaluated using a five-step, sequential evaluation process. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[25] If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.[26] If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded.[27] If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[28] to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[29] The plaintiff has the burden of proving that he or she is unable to perform past relevant work.[30] If the claimant meets this burden, a *prima facie* case of disability is established. The Commissioner then bears the burden of establishing that the

---

[24]   *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[25]   *See id.*

[26]   *See id.*

[27]   *See id.*

[28]   A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[29]   *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[30]   *See id.*

claimant can perform other substantial gainful work;[31] the determination of this issue comprises the fifth and final step in the sequential analysis.[32]

## III.  DISCUSSION

Cetera requests that the court reverse the ALJ's final decision and remand the case to the Social Security Administration for an award of benefits.  Alternatively, Cetera requests that this case be remanded for further administrative proceedings to determine whether she is disabled. The Commissioner in turn asks that the ALJ's final decision be affirmed.

The specific issues raised in this case are whether the ALJ properly: (1) found that Cetera could perform other work existing in the national economy; (2) articulated specific and legitimate reasons for rejecting the opinion of Cetera's treating physicians; and (3) provided specific and legitimate reasons for discounting Cetera's subjective complaints.

**A.     The ALJ Did Not Err in Finding that Cetera Could Perform Other Work in the Economy**

Cetera disputes whether substantial evidence supports the ALJ's finding that she could perform other work existing in the national economy.  Specifically, Cetera disputes the adequacy of the hypothetical questions that were posed to the vocational expert during the hearing.  Cetera contends that neither her attorney nor the ALJ included in the hypothetical questions posed to the vocational expert any reference to her age, education, work experience and non-exertional limitations, including restrictions on her performing work involving contact with the general public or any requirements that she have any extensive communication with supervisors and co-workers.  Cetera further contends that although the vocational expert identified five occupations for her, he did not provide the number of jobs existing in the national economy.  Instead, the ALJ himself later sought to reconcile the vocational expert's testimony with title numbers contained in the Dictionary of Occupational Titles.  Cetera contends that this was improper.

---

[31]  As discussed further below, there are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines.  *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

[32]  *See* 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995), *as amended* April 9, 1996; *Drouin,* 966 F.2d at 1257.

The Commissioner states that, notwithstanding any purported deficiencies in the vocational expert's testimony, the Medical-Vocational Guidelines (GRIDS) nevertheless offer substantial evidence supporting the finding of not disabled. The Commissioner argues that Cetera is able to do more than the full range of unskilled work at the light, medium, heavy and very heavy exertional levels. While the Commissioner acknowledges that Cetera is moderately limited in understanding, remembering, and carrying out complex, or detailed tasks, he argues that interacting with the public is not a basic work activity. As a result, the Commissioner maintains that the GRIDS may be used to support the finding of not disabled.

At step five, the burden of proof shifts to the agency to demonstrate that the claimant can perform a significant number of other jobs in the national economy.[33] "This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education."[34] The Social Security Administration established the GRIDS to assist in the step-five determination.[35] The GRIDS is a matrix of the four factors described above and specific rules that identify whether jobs requiring a specific combination of those factors exist in significant numbers in the national economy.[36] If the GRIDS match claimant's qualifications, the guidelines show whether jobs exist that claimant could perform.[37] On the other hand, if the GRIDS do not match claimant's qualification, the ALJ can either (1) use the GRIDS as a framework and determine what work exists that claimant can perform or (2) rely on a vocational expert if the claimant has significant non-exertional limitations.[38]

"The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids 'provide for the evaluation of claimants asserting both

---

[33] *See Hoopai v. Astrue,* 499 F.3d 1071, 1074 (9th Cir. 2007).

[34] *See id.* at 1075.

[35] *See id.*

[36] *See id.*

[37] *See id.*

[38] *See id.*

ORDER, *page 7*

1  exertional and non-exertional limitations.'"[39] "The step two and step five determinations require
2  different levels of severity of limitations such that the satisfaction of the requirements at step two
3  does not automatically lead to the conclusion that the claimant has satisfied the requirements at
4  step five."[40] At step five, "a vocational expert is required only when there are significant and
5  'sufficiently severe' non-exertional limitations not accounted for in the grid."[41]

6        Here, whatever the deficiencies in the vocational expert's testimony, the court finds
7  substantial evidence in the record to affirm that Cetera did not suffer from significant and
8  sufficiently severe non-exertional limitations. First, between August 1, 2003 and September 18,
9  2005, Cetera's treating physician Dr. Hector Cerezo indicated that Cetera was functioning well
10 and only experienced more severe symptoms during brief exacerbations of her impairments.[42]
11 Dr. Cerezo's notes further reflect that Cetera was reporting good relief from prescribed
12 medications and was consistently working or looking for work.[43]

13       Second, from August 1, 2005 to September 28, 2005, Dr. Anthony Cozzolino treated
14 Cetera and diagnosed her with bipolar II disorder (ruling out major depression); cyclothymia (a
15 panic disorder without agorophobia; and alcohol dependence (in sustained remission).[44] His
16 notes reflect that Cetera gave no description of clear manic symptoms and upon questioning, she
17 denied the presence of true panic attacks.[45] Dr. Cozzolini determined that her symptoms and
18 limitations were moderate.[46]

19       Third, beginning in August 2005, Cetera also received treatment from Dr. Zorica

---

[39] *See id.* (citation omitted).

[40] *See id.* at 1075.

[41] *See id.*

[42] *See* AR at 28.

[43] *See id.*

[44] *See* AR at 24.

[45] *See id.*

[46] *See id.*

Lialjevic.[47] Dr. Lialjevic diagnosed Cetera with recurrent depression of moderate severity.[48]

In *Hoopai v. Astrue,* the Ninth Circuit explained that "moderate depression" has not been held to a sufficiently severe non-exertional limitation that sufficiently limits a claimant's ability to do work beyond the exertional limitation.[49] As a result, whatever conflicting evidence was presented, the court finds that "more than a mere scintilla" of evidence supports the ALJ's conclusion that Cetera's depression was not a significant and sufficiently severe non-exertional limitation that prohibited the ALJ's reliance on the GRIDS.[50]

**B.   The ALJ Did Not Err in Rejecting the Opinion of Dr. Cerezo But Did Err in Rejecting the Opinion of Dr. Rowland**

Cetera argues that the ALJ was not justified in discounting the opinions of her treating physicians, Drs. Cerezo and Rowland. The Commissioner contends that the ALJ reasonably concluded that the opinions of Drs. Cerezo and Rowland were based on Cetera's subjective complaints and were contradicted and outweighed by the better-supported medical opinions of Dr. Roxanne Morse and state agency medical consultants.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it only by providing specific and legitimate reasons that are supported by substantial evidence.[51]

Here, the ALJ discounted the opinion of Dr. Cerezo because it was not based on a current treating relationship with Cetera and his treatment of her had been administered more than two-and-one-half years prior to the date of his opinion.[52] His initial intake examination occurred on July 30, 2003 and his treatment notes cover a period from August 1, 2003 to September 28,

---

[47] *See id.*

[48] *See id.*

[49] *See Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007).

[50] *See id.* at 1077. To the extent the ALJ entertained testimony from the vocational expert, any error in doing so was therefore harmless.

[51] *See Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chatar,* 81 F.3d at 830).

[52] *See* AR at 13.

2005.[53] However, he did not treat or examine Cetera for the next two and one-half years.[54] On January 25, 2008, Dr. Cerezo opined that Cetera had a marked restriction of her ability to perform a number of basic work activities as a result of poor concentration, mood swings, anxiety, and poor memory secondary to her posttraumatic stress disorder and bipolar I disorder.[55] He concluded that the earliest onset was July 19, 2005.[56] The ALJ concluded that he could not accord significant weight to Dr. Cerezo's opinion because he had not examined Cetera after July 2005 and before the date of his decision. Moreover, to the extent that Dr. Cerezo's treatment notes reflect that Cetera functioned well during the course of his treatment between July 2003 and July 2005 and that she only experienced more severe exacerbations of her impairments, the ALJ did accord significant weight to Dr. Cerezo's opinion. Based on the above, the court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to limit the weight he accorded to Dr. Cerezo's opinion outside of the dates he provided treatment to Cetera.

For his part, Dr. Rowland began treating Cetera on January 25, 2007.[57] He opined that Cetera had marked restriction of her ability to work in coordination with or proximity to others without being unduly distracted; of her ability to accept instructions and respond appropriately to criticism from supervisors; or her ability to interact properly with the general public; of her ability to maintain appropriate behavior and adhere to basic standards of cleanliness; and of her ability to set realistic goals and make plans independently of others.[58] He further opined that Cetera experienced anhedonia or pervasive loss of interest in almost all activities, psychomotor

---

[53] *See* AR at 12.

[54] *See id.*

[55] *See id.*

[56] *See id.*

[57] *See* AR at 10.

[58] *See id.*

ORDER, *page 10*

agitation or retardation, difficulty concentrating or thinking, and suicidal ideation.[59] The ALJ based his opinion substantially on Cetera's subjective statements, which the ALJ had found were not entirely credible.[60] Additionally, the ALJ determined that Dr. Rowland's opinion contained inconsistencies with his own treatment notes which reflect Cetera reporting that she experienced no side effects from prescribed medications and was well-groomed, fully-alert and oriented.[61] Finally, the ALJ noted that Cetera was able to sustain semiskilled work between 2004 and 2006, which demonstrated a functional capability fundamentally inconsistent with complaints of disabling symptoms.[62]

The ALJ accorded less weight to Dr. Rowland's opinion because his opinion was inconsistent with his own treatment notes which revealed Cetera consistently reported good results from treatment and no side effects from prescribed medications.[63] The ALJ also observed that while Cetera did exhibit a somewhat tangential thought process and labile effect during examinations performed by Dr. Rowland, these minor clinical abnormalities were outweighed by Cetera's acknowledgment to Dr. Rowland and examining physicians throughout the record that she was able to perform all of her daily activities and was repeatedly capable of sustaining fairly demanding unskilled work for periods up to 90 days.[64] The ALJ also noted Cetera's ability to perform semiskilled work for several significant periods of time between 2004 and 2006 demonstrated a functional capacity that was fundamentally inconsistent with complaints of disabling symptoms.[65]

In light of the highly deferential standard mandated by the Ninth Circuit, the court must

---

[59] *See id.*

[60] *See* AR at 14.

[61] *See* AR at 29.

[62] *See id.*

[63] *See* AR at 29, 296.

[64] *See* AR at 29,128-133, 240, 296-300.

[65] *See* AR at 296-300.

ORDER, *page 11*

1 conclude that these findings constitute substantial evidence to support the ALJ's rejection of Dr.
2 Rowland's statements.

3 **C.    The ALJ Properly Evaluated Cetera's Subjective Complaints**

4 Cetera argues that the ALJ improperly discounted her testimony regarding her limitations
5 and pain. She claims that the actual record does not provide sufficient grounds for the ALJ's
6 adverse credibility determination. The Commissioner asserts that the ALJ provided numerous
7 clear and convincing reasons for rejecting Cetera's subjective complaints, including the
8 conservative nature of the treatment she received, her significant daily activities, and the
9 inconsistencies between Cetera's testimony and certain statements she made to her treating
10 physicians.[66]

11 This court's review of the ALJ's decision regarding credibility determinations is
12 limited.[67] Undeniably, the ALJ's assessment of a claimant's credibility must be "properly
13 supported by the record" and "sufficiently specific" to assure the reviewing court that the ALJ
14 "rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's
15 testimony regarding pain."[68] Absent affirmative evidence of malingering, an ALJ may not
16 discount a claimant's testimony without clear and convincing reasons.[69] Nevertheless, the court
17 must give deference to the ALJ's assessment of Plaintiff's credibility if it is supported by the
18 record and applicable legal standards.[70]

19 Here, the ALJ concluded that Cetera had received only conservative treatment from
20 mental health care physicians and that Cetera had engaged in significant daily activities,
21 including preparing food, watching television, working in the garden, doing housework, going to

---

[66]   *See* AR at 28.

[67]   *See Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

[68]   *See Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (quoting *Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1213-1214 (11th Cir. 1991) (quotations omitted)).

[69]   *See Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001).

[70]   *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (citing *Reddick v. Chafer,* 157 F.3d 715, 720 (9th Cir. 1998)).

appointments, taking care of pets, doing laundry, shopping for food and personal items, and dining out with friends and family several times a month. The ALJ found Cetera's subjective complaints "not entirely credible" because of inconsistencies between her hearing testimony and statements she made to her doctors regarding the duration, severity, and limiting effect of her symptoms.

In *Johnson v. Shalala,* the Ninth Circuit held that discrepancies between medical evidence and a plaintiff's testimony may be considered in a credibility assessment.[71] "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."[72]

Based on the above, the court finds that the ALJ has provided clear and convincing reasons to reject Cetera's testimony. Affording the ALJ's credibility determination the deference to which it is entitled, the court finds no error.

## IV. CONCLUSION

For the foregoing reasons, Cetera's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:    March 29, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[71]  *See Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995).

[72]  *See Morgan v. Comm'r of Soc. Sec.,* 169 F.3d 595, 600 (9th Cir. 1999).